**NOT FOR PUBLICATION OR CITATION**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at ASHLAND**

**CIVIL ACTION NO. 07-CV-99-HRW**

**GLEN W. STAPLETON** **PLAINTIFF**

**VS:** **MEMORANDUM OPINION AND ORDER**

**BRIAN PATTON, *Warden*** **DEFENDANT**

Plaintiff Glen W. Stapleton, proceeding *pro se*, is confined in the Federal Prison Camp in the Federal Correctional Institution located in Ashland, Kentucky ("FCI-Ashland"). He has filed a *pro se* civil rights complaint asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971) [Record No. 2].[1] He also filed an "Application to Proceed *In Forma Pauperis,*" which the Court has granted by separate Order [Record No. 4].

This matter is before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim a valid claim under *Bivens*, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those

---

1

The Clerk of the Court initially characterized this proceeding as one falling under 42 U.S.C. § 1983. As the named defendants are officials acting under color of *federal*, not state law, the Court has by separate Order directed the Clerk of the Court to reclassify this action as one falling under 28 U.S.C. § 1331 (*Bivens*).

rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). Under 28 U.S.C. § 1915(e)(2) a district court has the authority to dismiss a case at any time if it determines that the action is: (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

NAMED DEFENDANTS

The named defendant is Brian Patton, Warden of FCI-Ashland.

CLAIMS

The plaintiff alleges that the defendant, Warden Patton, has violated his constitutional rights by denying visiting privileges to the plaintiff's brother, Brian Keith Stapleton. The plaintiff claims that the denial of visiting privileges violates three constitutional rights which he enjoys. The first is his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution. The second is his right to associate guaranteed by the Fifth Amendment of the United States Constitution. The third is his right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment of the United States Constitution.

RELIEF REQUESTED

The plaintiff seeks injunctive relief. Specifically, the plaintiff seeks an Order requiring the Bureau of Prisons ("BOP") to allow his brother to visit him at FPC-Ashland. [Complaint, Record No. 2-1, p.4].

ALLEGATIONS OF THE COMPLAINT

The plaintiff states that during the seven years in which he has been a federal inmate, he has not violated any prison rules or caused an incident report to be written against him. He states that prior to being confined in FPC-Ashland, he was confined in the Federal Medical Center located in Lexington ("FMC-Lexington").[2] Plaintiff further states that his brother, Brian Keith Stapleton is listed on his Pre-Sentence Investigation ("PSI") Report as "immediate family."

Plaintiff states that while he was confined at FMC-Lexington, his brother was an approved visitor for some period of time. When the plaintiff was transferred to the lower security level FPC-Ashland, however, the plaintiff was told that "the proper visiting forms" had not been properly completed "for certain members"on the plaintiff's visiting list.[3]

The plaintiff states that despite his attempt to remedy the administrative problem concerning his brother's visitation privileges, and despite waiting over a year, FPC-Ashland officials denied his brother visitation privileges. Plaintiff complains that his Counselor, the Unit Team, the Warden, the BOP Regional Director and the BOP General Counsel all refused to provide him with a specific explanation as to why his brother was being denied visitation privileges. He states that they informed him only that "available information" prevented the BOP from allowing his brother to visit him. He states that no one within the BOP explained to

---

[2] The Federal Medical Center (FMC) in Lexington, Kentucky is an administrative facility for male inmates. The facility also has an adjacent minimum security satellite camp for female inmates.

[3] FPC-Ashland officials informed the plaintiff that the paperwork problem had actually been noted when the plaintiff was still confined in FMC-Lexington.

him what the exact nature of the "available information" was, or why his brother was not an approved visitor.

Plaintiff further asserts that he has not violated any prison rules, and that cases where family members have been denied visitation privileges have involved smuggling activities by the family member. The plaintiff denies that his brother ever smuggled anything to him.

EXHAUSTION EFFORTS
1. Denial of BP-9

The plaintiff's filings reveal that he has fully exhausted his claim through the BOP three-step administrative process set forth in 28 C.F.R. § 542.13-15. On May 14, 2007, Warden Patton denied the plaintiff's BP-9 "Request for Administrative Remedy" [Record No. 2-5]. Patton stated that he was supporting the previous decision to disapprove the plaintiff's brother from the visiting list. Warden Patton was unable to disclose the specific reason for the denial of the visitation privilege, stating that laws prohibited the release of private information to third parties.

Warden Patton acknowledged that the BOP encourages visiting by family members "to develop closer relationships between the inmate and family members." [*Id.*]. He qualified that statement by noting that the BOP also has the responsibility to restrict visitation "when necessary to ensure the security and good order of the institution." [*Id.*].

2. Denial of BP-10

On June 19, 2007, K.M. White, Regional Director of the BOP's Mid-Atlantic Region, denied the plaintiff's BP-10 appeal [Record No. 2-7]. Citing BOP Program Statement ("PS") 5267.08, *Visiting Regulations*, White noted that the Warden may restrict visiting privileges whenever necessary "to ensure the security and good order of the institution." [*Id.*]. Like

Warden Patton, Director White did not reveal the specific reason(s) for denying visitation privileges to the plaintiff's brother.

3. Denial of BP-11

On September 5, 2007, Harrell Watts, Administrator of the BOP National Inmate Appeals denied the final administrative appeal, the plaintiff's BP-11 appeal [Record No. 2-9]. Citing PS 5267.08, *Visiting Regulations*, Watts reiterated Director White's conclusion that the BOP has discretionary authority to deny visiting privileges to ensure "security and good order of the institution." [*Id*].

Watts further noted that because some prisons have different characteristics and security designations, decisions affecting or limiting visitation privileges are made based upon those factors and other practical considerations. As such, Watts noted that PS 5267.08 recognizes that visitor restrictions may vary from prison to prison. He further noted that the "nature, extent and recentness of convictions" would affect decisions relating to visitation [*Id*.].

Finally, Watts determined that the Warden properly exercised his discretion in suspending visiting privileges to the plaintiff's brother. Watts cited the Warden's concern that the plaintiff's brother "posed a potential threat to the security and good order of FCI-Ashland." [*Id*]. Like Warden Patton and Director Watts, Harrell Watts declined to specify the nature of the potential threat posed by the plaintiff's brother.

## DISCUSSION

1. Limits on Inmate Visitation

While PS 5267.08 states the general rule that visitation by an inmate's family members is considered a positive influence, the BOP has the authority to limit family visitation if it

perceives a potential threat to the security of the institution. Put in other words, a prisoner's right to visitation with family members, like so many other conditions of confinement, is not absolute or unfettered. Prison officials may limit a prisoner and his visitor's First Amendment rights if their actions are reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir.1994) (per curiam).

Addressing the issue of restrictions on inmate visitation privileges, the United States Supreme Court explained as follows in a case as recent as 2003:

> We have said that the Constitution protects "certain kinds of highly personal relationships," *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). And outside the prison context, there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents. *See Moore v. East Cleveland*, 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed.2d 531 (1977) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625 (1923). . . .
>
> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); Shaw v. Murphy, 532 U.S. 223, 229 (2001). And, as our cases have established, freedom of association is among the rights least compatible with incarceration. *See Jones*, *supra*, at 125-126; *Hewitt v. Helms*, 459 U.S. 460 (1983). Some curtailment of that freedom must be expected in the prison context."

*Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167 (2003).

In *Overton*, the Court assessed the constitutionality of the Michigan prison regulation at issue (restricting visitation by children) under the First Amendment. The Court concluded that the prison regulation bore a rational relation to the Michigan Department of Correction's valid

interest in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury. *Overton*, 539 U.S. at 133. The Court held that the regulations promoted internal security, and other penological goals by reducing the total number of visitors and by limiting the disruption caused by children in particular. The Court also noted that protecting children from harm was also a legitimate goal. *Id*.

The case of *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293 (1995) redefined the concept of protected liberty interests enjoyed by prisoners under the Eighth Amendment, and severely limited the scope of such interests. Under *Sandin*'s analysis, denial of visitation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 115 S. Ct. 2293, 2300 (1995).

2. <u>Law Applied to Facts</u>

Here, the BOP, through its Program Statement, maintains discretion to restrict inmate visitation, even by family members. Out of respect for the privacy interests of the plaintiff's brother, neither the plaintiff nor the Court knows the specific reason why the BOP determined that the plaintiff's brother posed a potential security risk to FPC-Ashland. The Court is unable and unwilling to say that the BOP's refusal to enunciate the particular facts behind its decision violates the plaintiff's First, Fifth or Eighth Amendment constitutional rights.

Officials at FCI-Ashland had a reason for denying visiting privileges to Brian Keith Stapleton. Though not detailed, the BOP's consistent position that the plaintiff's brother would create a security concern satisfies the criteria set forth in *Turner v. Safley*: that a decision restricting an inmate's right must be reasonably related to legitimate penological interests.

*Turner* 482 U.S. at 89. To require the BOP to explain the specific facts behind its decision and disclose possibly sensitive information about a third party (plaintiff's brother) would sanction judicial micro-management and day- to-day decisions of prison officials, an activity which the United States has not encouraged. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78; *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).

The Court further notes that plaintiff is now confined in a facility with a lower security designation than FMC-Lexington. To the extent that it is likely to assume that the plaintiff's brother, for some reason, presents a legitimate threat to the security and order of a lower security level prison camp, the BOP's decision to refuse visiting privileges to plaintiff's brother must be supported.

In sum, prisoners enjoy no protected liberty interest - - under any amendment of the Constitution - - in family visitation, especially if the BOP perceives a threat to prison security. The BOP is vested with the authority and discretion to determine what is or is not a valid threat to prison safety, and the as explained, the role of the courts is not to second guess exercise of that discretion. As "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,'" the defendant here, Warden Patton, did not violate Plaintiff Stapleton's First, Fifth or Eighth Amendment rights by denying him visitation with his brother. *See Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).[4] The plaintiff's claims are therefore

---

4

*See also Cook v. Cook* 1997 WL 121207, *1 (6th Cir (Ohio)March 14,1997) (no due process

dismissed with prejudice for failure to state a claim. 28 U.S.C. § 1915 (e)(2)(ii).

CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This October 24, 2007.




**Signed By:**
***Henry R Wilhoit Jr.***
**United States District Judge**

---

violation where prisoner was denied visitation with daughter); *Polk v. Parnell*, 132 F.3d, 1997 WL 778511 (6th Cir. (Ky.) December 8, 1997) (defendants' restrictions on Polk's religion and visitation privileges were reasonably related to legitimate penological interests); and *Thacker v. Campbell*, 165 F.3d 28, 1998 WL 53799 (6th Cir. (Tenn.) August 7, 1998)(where prisoner and his wife had engaged in sexual contact during earlier visitations, the defendants' actions in suspending wife's visitation with husband for three months was rationally related to legitimate penological interest of maintaining orderly visitation between inmates and visitors).